NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TOBI GELLMAN, AS TRUSTEE OF THE MAYER MICHAEL LEBOWITZ TRUST,**
*Plaintiff-Appellant,*

v.

**TELULAR CORPORATION,**
*Defendant-Appellee,*

**and**

**NAPCO SECURITY SYSTEMS, INC.,**
*Defendant-Appellee,*

**and**

**VISONIC INC.,**
*Defendant-Appellee.*

---

2011-1196

---

Appeal from the United States District Court for the Eastern District of Texas in case no. 07-CV-0282, Magistrate Judge Charles Everingham, IV.

---

Decided: November 30, 2011

---

CORBY R. VOWELL, Goldstein & Vowell, LLP, of Houston, Texas, for plaintiff-appellant. With him on the brief was EDWARD W. GOLDSTEIN.

JULIANNE M. HARTZELL, Marshall, Gerstein & Borun, LLP, of Chicago, Illinois, argued for all defendants-appellees. With her on the brief were THOMAS I. ROSS and BENJAMIN T. HORTON, for Visonic, Inc; JAMES P. HANRATH and MARVIN N. BENN, Much Shelist Denenberg, Ament & Rubenstein, P.C., of Chicago, Illinois; JENNIFER A. HALTON. DOAN and MORGAN D. VAUGHN, Haltom and Doan, of Texarkana, Texas for defendant-appellee, Telular Corporation; JOHN R. MUGNO, Law Offices of John R. Mugno, of New York, New York and AMANDA A. ABRAHAM, Law Office of Carl R. Roth, of Marshall, Texas, for defendant-appellee, Napco Security Technologies, Inc.

———————————

Before BRYSON, CLEVENGER, and PROST, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

Plaintiff Tobi Gellman brought this action for infringement of a patent on which her late husband, Mayer Michael Lebowitz, is a named co-inventor. Ms. Gellman is a Trustee of the Mayer Michael Lebowitz Trust ("the Lebowitz Trust"), which Ms. Gellman claimed was the sole legal owner of the patent. Because it held that the Lebowitz Trust was at best a joint legal owner, and because the co-owner was not a party, the district court dismissed without prejudice for lack of standing. *Gellman v. Telular Corp.*, No. 2:07-cv-282, 2010 WL 5173213 (E.D. Tex. Dec. 14, 2010). We affirm.

I

At issue is U.S. Patent No. 6,075,451 (filed Jul. 15, 1996) ("the '451 patent"). Mr. Lebowitz was one named

inventor. The other was the late James Seivert. '451 patent at [76]. As co-inventors Messrs. Lebowitz and Seivert (and, subsequently, any heirs or assignees) are presumptive joint legal owners. 35 U.S.C. §§ 116, 262 (2006).

It is well-established that a patent infringement case cannot proceed without the participation of all legal owners. *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40–41 (1923). Mr. Seivert's heirs are not parties here, and it was on this basis that the district court dismissed the case. It rejected Ms. Gellman's various attempts to show that Mr. Seivert's ownership interest had been legally transferred to Mr. Lebowitz (and, by extension, to the Lebowitz Trust) as lacking in evidentiary support and misapplying the law. We have jurisdiction to review this final judgment of a district court in a case arising under the patent laws. 28 U.S.C. §§ 1295(a)(1), 1338(a) (2006).

## II

A dismissal for lack of subject matter jurisdiction is a procedural question not unique to patent law, and so this court follows the law of the regional circuit, here the Fifth Circuit. *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). Interpretation of contract terms is typically reviewed under regional circuit law. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006). The question of whether contractual language effects a present assignment of patent rights, or an agreement to assign rights in the future, however, is resolved by the law of this court. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008).

On a motion attacking subject matter jurisdiction as a matter of fact (i.e., based on evidence beyond the plead-

ings), a district court in the Fifth Circuit determines the necessary facts under a preponderance standard and from that determines if jurisdiction exists. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *New Orleans & Gulf Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). The Fifth Circuit reviews district court jurisdictional findings of fact for clear error. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The Fifth Circuit reviews a district court's contract interpretation de novo. *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co.*, 642 F.3d 506, 509 (5th Cir. 2011). The Fifth Circuit also reviews a dismissal for lack of subject matter jurisdiction de novo. *Krim*, 402 F.3d at 494.

## III

Ms. Gellman contends that Mr. Seivert was Mr. Lebowitz's employee, and that the terms of his employment included full transfer of rights to any resulting inventions.

The evidentiary record, however, is thin and unsupportive. Ms. Gellman has been unable to produce any signed writing describing the terms of this employment. Instead, she offers a document bearing the title "AGREEMENT FOR CONSULTING SERVICES," unsigned but purporting to set up Mr. Seivert as a consultant to a company that Mr. Lebowitz operated called Cellular Alarm Systems, Inc. ("Cellular Alarm"). Unsigned Agrmt., J.A. 244. Ms. Gellman also offers several canceled checks, signed by either Mr. Lebowitz or herself, made out to various companies that she says were associated with Mr. Seivert. From this circumstantial evidence Ms. Gellman argues for the existence of a contract between Cellular Alarm and Mr. Seivert along the lines of the Unsigned Agreement. The statute of frauds is no obstacle, she contends, because Texas law incorporates a "partial performance" exception by which a contract can

exist in certain circumstances even absent a signed writing.

Ms. Gellman then claims that the Unsigned Agreement transferred away any and all of Mr. Seivert's legal claims to the '451 patent. The Unsigned Agreement states:

> [A]ny and all ideas, discoveries, inventions, [etc.] . . . developed, prepared, conceived, made, discovered or suggested by [Mr. Seivert] when performing services pursuant to this Agreement . . . shall be and remain the exclusive property of Cellular Alarm. [Mr. Seivert] agrees to execute any and all assignments or other transfer documents which are necessary, in the sole opinion of Cellular Alarm, to vest in Cellular Alarm all right, title, and interest in such Work Products.

Unsigned Agrmt. ¶ 8, J.A. at 245–46.

These efforts to demonstrate standing, however, fail as a matter of law. At the outset we note that the lack of a signed instrument, while troubling, is not fully dispositive. The Patent Act requires that all assignments of patent interests be in writing. 35 U.S.C. § 261 (2006). But there are means of transferring patent ownership beyond assignment, and not all of them require a writing. *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1381 (Fed. Cir. 2009). Neither the district court nor the parties expressly addressed whether the contract here (if one were held to exist) would be an assignment subject to the requirements of section 261. Because we conclude that Ms. Gellman's argument fails for other reasons, we need not reach this issue. Even assuming that the Unsigned Agreement's language were enforceable as a contract, and that section 261 was no bar—and we refrain from either holding— neither the cited language nor anything else in the Un-

signed Agreement is sufficient to confer standing in this case.

To proceed without the participation of Mr. Seivert's heirs, Ms. Gellman has the burden to prove sole legal ownership. An equitable claim to title alone will not suffice. *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579–80 (Fed. Cir. 1991). Aware of this law, Ms. Gellman argues that the Unsigned Agreement conveyed full legal title to Mr. Lebowitz for any invention by Mr. Seivert because such an invention "shall be and remain the property of Cellular Alarm." Unsigned Agrmt. ¶ 8, J.A. at 245–46. According to Ms. Gellman, in order for the invention to "remain" it necessarily had to have been fully conveyed previously. We think the language is not necessarily so clear. In context, the word "remain" indicates that Mr. Seivert's contributions to inventions "remained" in equitable status until such a time as Mr. Seivert "execute[d] any and all assignments or other transfer documents which are necessary . . . to vest in Cellular Alarm all right, title and interest" in such inventions. Otherwise, the "execute any and all assignments" language in the contract is surplusage without relevant meaning. The most the Unsigned Agreement could do is create an obligation for Mr. Seivert to assign to Cellular Alarm. Cellular Alarm (and by extension Mr. Lebowitz) might therefore have an equitable claim to title. This claim could be converted to legal title if and when Mr. Seivert actually assigns or, if necessary, through legal action. But it did not, and will not, confer legal title automatically.

While it is possible for an employee to assign any and all of his rights to future inventions, this court has consistently required that present assignments of future rights expressly undertake the assigning act at the time of the agreement, and not leave it to some future date. *See Bd.*

*of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841–42 (Fed. Cir. 2009) (finding present assignment in the language "I will assign and do hereby assign"), *aff'd*, 131 S. Ct. 2188 (2011); *DDB Techs.*, 517 F.3d at 1290 (same, for language "agrees to and does hereby grant and assign"); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) ("hereby conveys, transfers, and assigns"); *FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991) ("agrees to grant and does hereby grant"). By that measure, the language of the Unsigned Agreement is lacking. Rather than expressly undertake assignment at signing, it expressly delays assignment to some future date, when Mr. Seivert would "execute any and all assignments or other transfer documents" necessary to convey his rights to Cellular Alarm. The district court was therefore correct in its conclusion that the Unsigned Agreement, if enforceable as a contract, could do no more than create an equitable claim for the Lebowitz Trust. And as already mentioned equitable claims do not themselves confer standing.

The same logic applies to Ms. Gellman's claim that the "hired to invent" doctrine can save her standing. Courts have in some cases held that the inventions of an employee hired to make that invention fairly belong to the employer. *See, e.g.*, *Solomons v. United States*, 137 U.S. 342, 346 (1890). But this doctrine is expressly equitable, and creates only an obligation for the employee to assign to his employer. *Melin v. United States*, 478 F.2d 1210, 1213 (Ct. Cl. 1973); *see also Banks v. Unisys Corp.*, 228 F.3d 1357, 1359 (Fed. Cir. 2000). It cannot save Ms. Gellman's case.

Ms. Gellman also argues that the district court should have granted her additional discovery before dismissing her case. But we see no error there. Ms. Gellman had

several months in which to conduct discovery before either the motion to dismiss or the dismissal order. Her brief opposing dismissal made no mention of a need for further discovery. And the district court's dismissal was without prejudice. We understand that Ms. Gellman has initiated proceedings to further pursue her claim, and we see no reason she cannot take discovery there. When and if her claim to legal title is confirmed, she can re-initiate this infringement action and begin anew.

For the foregoing reasons, the district court did not err in dismissing without prejudice Ms. Gellman's case for lack of standing. We reject appellees' contention that the dismissal should have been with prejudice.

Because Ms. Gellman's appeal was not frivolous, we deny Appellees' motion for damages and single or double costs. Fed. R. App. P. 38.

**AFFIRMED**